IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JACOB BLAIR SCOTT,                                                                                      PLAINTIFF

V.                                                                        CIVIL ACTION NO. 1:21-CV-318-TBM-RPM

JACKSON COUNTY, MS, ET AL.,                                                                        DEFENDANTS

## REPORT AND RECOMMENDATIONS

### I.     Introduction

On October 21, 2021, plaintiff Jacob Blair Scott ("Scott") filed a Complaint alleging numerous claims against defendants Jackson County, MS, Mark Maples ("Chancellor Maples"), Amanda Capers ("Capers"), Matthew Lott ("Lott"), Lott Law Firm LLC ("Lott Law Firm"), and Jamie Marie Rouse ("Rouse"). Before the Court is a motion to dismiss filed by defendant Chancellor Maples. Doc. [12]. This motion is opposed. Doc. [15].[1]

### II.     Factual Background

In February 2017, Scott was arrested on sexual assault charges; he pleaded not guilty. Doc. [1], Ex. 1, at 6. Scott's then-wife, Rouse, filed for divorce through her retained attorney, Lott, around this time. *Ibid.* On January 5, 2018, Chancellor Michael L. Fondren ("Chancellor Fondren") conducted a trial in connection with the division of marital property. *Id.*, Ex. 1, at 6–7. Equitably distributing the marital property, Chancellor Fondren awarded permanent periodic alimony and

---

[1] In passing, Scott improperly filed a sur-reply without leave of Court. Doc. [17]. The Court may disregard an unauthorized sur-reply. *See*, *e.g.*, *Mims v. Gen. Motors*, No. 3:09–CV–617–DPJ–FKB, 2011 WL 4454932, at *3 (S.D. Miss. Sept. 23, 2011). Nevertheless, in its discretion, the Court has considered Scott's unauthorized sur-reply. *Cannady v. Woodall*, No. 1:20–CV–130–HSO–RPM, 2020 WL 8515056, at *2 n.1 (S.D. Miss. Dec. 3, 2020), *adopted*, No. 1:20–CV–130–HSO–RPM, 2021 WL 215490 (S.D. Miss. Jan. 21, 2021). To the extent that Scott argues therein that Chancellor Maples' counsel has not made an entry of appearance, counsel signed the motion to dismiss. Doc. [12]. This was sufficient. *See*, *e.g.*, *Silver v. Clark Cnty., Nevada*, No. 219CV00032APGBNW, 2021 WL 3671183, at *1 (D. Nev. Aug. 17, 2021). Scott's argument fails.

attorneys' fees to Rouse. Doc. [1], Ex. 4. Chancellor Fondren also found Scott in contempt and sanctioned him. *Ibid.*

Around this time, Scott allegedly began experiencing threats and violence in connection with his pending criminal charges. Doc. [1], Ex. 1, at 8. For example, tacks were allegedly thrown on his lawn and his car was allegedly vandalized. *Ibid.* Prior to his criminal trial, Scott absconded from Mississippi. *Ibid.* On January 28, 2020, U.S. Marshals discovered Scott living in Antlers, OK and arrested him. *Ibid.* After Scott's arrest, law enforcement officials seized Scott's motorcycle, camper van, and "larger motor home" along with valuables therein (collectively, "Oklahoma property"). *Ibid.* On February 7, 2020, Lott, on behalf of Rouse, filed an emergency motion for a temporary restraining order ("TRO") in Mississippi chancery court. *Id.*, Ex. 8. Granting Rouse's emergency motion for a TRO, Chancellor Maples directed that Scott's Oklahoma property be held by Rouse pending further order of the Court. *Id.*, Ex. 1, at 9–10, 14; Ex. 8, 16.[2] According to Scott, he was "never served" with the emergency order and only received a copy from his mother. *Id.*, Ex. 1, at 10. In compliance with the Order, Lott travelled to Oklahoma to collect the Oklahoma property pending Chancellor Maples' final decision. Doc. [1], Ex. 1, at 10.[3] Lott "illegally" seized at least some of the Oklahoma property and returned to Mississippi. *Id.*, Ex. 1, at 11–12.

On June 4, 2020, Chancellor Maples conducted a hearing in connection with the reopened divorce proceedings; Scott attended with counsel. Doc. [1], Ex. 1, at 12, Ex. 13. During these proceedings, Scott alleges, Chancellor Maples made statements demonstrating his prejudice against Scott. *Id.*, Ex. 1, at 13. Scott also alleges that Chancellor Maples intentionally inflicted emotional distress on him by "mockingly" questioning the whereabouts of the Oklahoma property.

---

[2] Chancellor Maples reasoned that such a TRO was warranted in light of Scott's past conduct, including faking his own death and absconding from Mississippi. *Id.*, Ex. 8, at 2.
[3] According to Scott, Rouse travelled to Oklahoma with Lott. Doc. [1], Ex. 1, at 13. However, Rouse's sworn statements reflect the opposite. *Id.*, Ex. 13.

*Id.*, Ex. 1, at 16. On December 9, 2020, Chancellor Maples entered final judgment and awarded, *inter alia*, Scott's social security payments and Oklahoma property to Rouse. *Id.*, Ex. 18. By ordering the Oklahoma property to be seized, Scott alleges, Chancellor Maples' ruling was made in the complete absence of jurisdiction. *Id.*, Ex. 1, at 15. Scott further claims that Chancellor Maples' decision contains errors reflecting his "bias and manipulation." *Id.*, Ex. 1, at 17. In 2021, Scott subsequently moved for replevin and recusal. *Id.*, Ex. 1, at 16–17. After these motions were denied, Scott appealed Chancellor Maples' final decision. *Ibid.*

### III. Analysis

#### A. Official Capacity Claims

Under Rule 12(b)(1), a party or claim can be dismissed for lack of subject matter jurisdiction. *See Beleno v. Lakey*, 306 F. Supp. 3d 930, 938–39 (W.D. Tex. 2009). Rule 12(b)(1) applies in the Eleventh Amendment context. *Daniel v. Univ. of Texas Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020). When evaluating a Rule 12(b)(1) motion, the Court "must take all of the factual allegations in the complaint as true, but . . . [it is] not bound to accept as true a legal conclusion couched as a factual allegation . . . . [A] district court is empowered to find facts as necessary to determine whether it has jurisdiction." *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).

Pursuant to the Eleventh Amendment, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Fla. Bd. Of Regents*, 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (collecting cases). This means that the State sovereign, including its departments and agencies, is generally immunized from cases seeking monetary damages or equitable relief. *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). There are, however, exceptions to the general rule of sovereign immunity: (i) a state may consent to be sued, *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527

U.S. 666, 675–676, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); (ii) Congress may "unequivocally" abrogate state immunity through "a valid exercise of [its] power," *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); or (iii) a litigant may sue a state official in his official capacity seeking prospective injunctive relief to redress an ongoing violation of federal law, *Ex parte Young* [*Young*], 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).[4]

Here, a Mississippi chancery court judge acting in his official capacity is a state actor entitled to raise sovereign immunity. *See*, *e.g.*, *Bowen v. Keys*, No. 3:20–CV–296–DPJ–FKB, 2020 WL 4228160, at *5 (S.D. Miss. July 23, 2020); *Davis v. City of Vicksburg, Miss.*, No. 3:13–CV–886 DCB–MTP, 2015 WL 4251008, at *2 (S.D. Miss. July 13, 2015). *See also Davis v. Tarrant Cty., Tex.*, 565 F.3d 214, 228 (5th Cir. 2009). Mississippi has not waived sovereign immunity with relation to Section 1983 suits filed in federal court. *See*, *e.g.*, *Williams v. Errington*, No. 1:20–CV–24–RPM, 2022 WL 368817, at *3 (S.D. Miss. Feb. 7, 2022). Likewise, Congress did not abrogate state sovereign immunity in Section 1983 cases. *Quern v. Jordan*, 440 U.S. 332, 340, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). Finally, Scott only seeks compensatory damages, not prospective injunctive relief, so *Young* does not apply. *See* Doc. [1], at 6. For these reasons, Chancellor Maples is entitled to sovereign immunity insofar as Scott is suing him in his official capacity.

### B. Individual Capacity Claims

---

[4] In opposition to Chancellor Maples' motion, Scott clarifies that he is suing Chancellor Maples, in his official capacity, in connection with an alleged ongoing violation of *federal* law. Doc. [15], at 2. By extent, since the *Young* doctrine only applies to alleged ongoing violations of federal law, Scott is not asserting any *state law* official capacity claims against Chancellor Maples. Doc. [1], Ex. 1. On this point, the Court has a legal obligation to liberally construe Scott's factual obligations, *Grizzle v. Elliott*, 849 F. App'x 128, 129 (5th Cir. 2021), but need not accept Scott's "bald assertions" and "legal conclusions[,]" *Fleming v. Blewitt*, No. CV 10–2048 (FLW), 2010 WL 11595154, at *1 (E.D. Pa. July 16, 2010) (quoting *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)), *aff'd*, 403 F. App'x 645 (3d Cir. 2010). As such, the Court declines to construe Scott's Complaint to assert a claim arising under 18 U.S.C. § 371 against Chancellor Maples, Doc. [1], Ex. 1, at 2–3, because this legal theory is frivolous, *Rockefeller v. U.S. Court of Appeals Office, for Tenth Circuit Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003). As a result, Scott's only legally cognizable federal claims against Chancellor Maples arise under Section 1983. Doc. [1], Ex. 1, at 2–3.

In evaluating a Rule 12(b)(6) motion to dismiss, the Court "must accept all well-pleaded facts as true, and [] view them in the light most favorable to the plaintiff." *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* "Threadbare recitals of the elements of a cause of action, [however,] supported by mere conclusory statements, do not suffice[]" as factual allegations and are viewed instead as legal conclusions couched as factual allegations. *Ibid.* Finally, the Court's review encompasses: "'the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quotation omitted).

Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).[5] "'Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (quotation omitted). When judicial immunity is invoked, "[i]t is the Judge's actions alone, not intent, that . . . [the

---

[5] Judicial immunity does not implicate subject-matter jurisdiction. *Morrison v. Walker*, 704 F. App'x 369, 372 n.5 (5th Cir. 2017). In turn, it is appropriate to consider under Rule 12(b)(6). *Ibid.*

Court] must consider." *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993). As such, "[j]udicial immunity is not overcome by allegations of bad faith or malice[,]'" *Ballard*, 413 F.3d at 515 (quotation omitted), or "mere allegations that . . . [the judge] performed . . . [judicial] acts pursuant to a bribe or conspiracy[,]" *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985), "and 'applies even when the judge is accused of acting maliciously and corruptly[,]'" *Ballard*, 413 F.3d at 515 (quotation omitted). Nevertheless, there are two exceptions to the general rule of judicial immunity: (1) "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity"; and (2) "a judge is not immune from actions, though judicial in nature, [that are] taken in the complete absence of all jurisdiction." *Bowling v. Roach*, 816 F. App'x 901, 906 (5th Cir. 2020) (quoting *Mireles*, 502 U.S. at 11–12, 112 S.Ct. 286).

First, the Court asks whether Scott's allegations against Chancellor Maples arise from a judicial act. To determine whether an action qualifies as a "judicial act," the Court examines:

> (1) whether the alleged act is a normal judicial function; (2) whether the act occurred in the judge's courtroom or chambers; (3) whether the controversy involved a case pending before the judge; and (4) whether the act arose directly out of a visit to the judge in his official capacity.
>
> [*Malina*, 994 F.2d at 1124.]

"These factors are broadly construed in favor of immunity[,]" *Ballard*, 413 F.3d at 515 (citation omitted), and "[i]mmunity may be applied even if one or more of these factors is not met[,]" *Morrison*, 704 F. App'x at 373 (citing *Malina*, 994 F.2d at 1124).

Here, Scott's claims against Chancellor Maples arise from Chancellor Maples' orders, courtroom statements, and delays in issuing rulings in a state court case involving him and his former spouse. *See*, *e.g.*, Doc. [1], Ex. 1, at 10, 13–15; Ex. 21. Indeed, Scott attaches numerous court orders and hearing transcripts to his Complaint to support his allegations against Chancellor

6

Maples. *See*, *e.g.*, *id.*, Ex. 13, 16, 21. Chancellor Maples' alleged actions plainly occurred within the courtroom and chambers. *Id.*, Ex. 13, 16, 21. For these reasons, Scott's allegations against Judge Maples derive from Judge Maples' judicial acts and Scott cannot proceed against Chancellor Maples under the first judicial immunity exception. *Ballard*, 413 F.3d at 515.

Next, the Court addresses whether Chancellor Maples acted in the complete absence of jurisdiction. "In determining whether there is a complete absence of jurisdiction in the context of judicial immunity, 'the scope of the judge's jurisdiction must be construed broadly.'" *Morrison*, 704 F. App'x at 373 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). As such, "[w]here a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Malina*, 994 F.2d at 1125 (citation omitted). Likewise, even if a judge "'acted in excess of [his] authority,' he is still protected by judicial immunity." *Id.* (citation omitted).

Here, Scott alleges that Chancellor Maples' violative judicial acts include: (i) reopening Scott's divorce proceedings; (ii) granting Rouse's *ex parte* motion for a TRO; and (iii) exercising jurisdiction over Scott's Oklahoma property. Doc. [1], Ex. 1; [15]. To begin with, in Mississippi, the chancery courts have subject-matter jurisdiction over divorce proceedings, *Ridgeway v. Hooker*, 240 So.3d 1202, 1207 (Miss. 2018) ("Section 159 of the Mississippi Constitution vests subject-matter jurisdiction in the chancery courts over divorce proceedings."), so long as one spouse is domiciled in Mississippi, *Williams v. North Carolina*, 317 U.S. 287, 298–99, 63 S.Ct. 207, 213, 87 L.Ed. 279 (1942). Furthermore, the division of marital property merely implicates personal, not subject-matter, jurisdiction, *Estin v. Estin*, 334 U.S. 541, 549, 68 S.Ct. 1213, 1218, 92 L.Ed. 1561 (1948); *Pierce v. Pierce*, 132 So.3d 553, 561 (Miss. 2014), and a lack of personal jurisdiction does not abrogate judicial immunity, *Harper v. Merckle*, 638 F.2d 848, 858 (5th Cir.

7

1981), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981); *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000); *Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir. 1986). Finally, Mississippi chancery courts may reopen divorce proceedings on motion, *Dunn v. Dunn*, 911 So.2d 591, 601–2 (Miss. Ct. App. 2005), and grant *ex parte* emergency motions for a TRO, M.R.C.P. 65; *C.M. v. R.D.H., Sr.*, 947 So.2d 1023, 1028–29 (Miss. Ct. App. 2007). With the above in mind, Rouse is–as Scott concedes–domiciled in Mississippi, the divorce proceedings occurred in Mississippi chancery court, and Chancellor Maples only exercised personal jurisdiction over Scott's Oklahoma property. Doc. [1], Ex 1, 8. For these reasons, Chancellor Maples did not completely lack jurisdiction to undertake the complained-of acts. *Morrison*, 704 F. App'x at 373.

In light of the above, Scott cannot proceed against Chancellor Maples under either exception to judicial immunity. Chancellor Maples is entitled to judicial immunity and Scott's individual capacity claims against him must be dismissed. *Holloway*, 765 F.2d at 522.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Chancellor Maples' [12] motion to dismiss should be granted and Chancellor Maples should be dismissed from this case.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.

A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

    **SO ORDERED AND ADJUDGED**, this the 22nd day of July 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE